**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **NEON ENTERPRISE SOFTWARE, LLC,** *Plaintiff* | § § § | |
| | § | **No. 1:09-CV-00896-DH** |
| **v.** | § § | |
| **INTERNATIONAL BUSINESS MACHINES CORPORATION,** *Defendant* | § § § | |

**ORDER**

Before the Court is non-party respondent John Moores's motion for partial reconsideration of order to show cause, Dkt. 284, and all related briefing. The Court will grant in part and deny in part the motion.

## I. BACKGROUND

Plaintiff Neon Enterprise Software, LLC ("Neon") brought this lawsuit against Defendant International Business Machines Corporation ("IBM"), alleging that IBM violated the Lanham Act, the Clayton Act, the Sherman Act, and various state statutes. Dkt. 58, at 4. IBM counter-claimed, alleging that Neon's business model was designed to "entice IBM customers to breach their licensing agreements with IBM" by advertising Neon's product, zPrime, as enabling IBM users to "use computer processing capacity beyond that which they are contractually authorized to use for free, without paying required fees to IBM." Dkt. 67, at 2. The case settled in 2011, and the parties stipulated to dismissal with prejudice subject to an agreed permanent injunction against Neon. Dkt. 166. Among other things, that injunction generally

prohibited Moores from directly or indirectly transferring zPrime, products with functionality similar to zPrime, or any IBM z/OS code and from reverse assembling, reverse compiling, or otherwise translating any IBM program. Dkt. 165, at 6.

IBM asked the Court to reopen this case based on its belief that Moores, CEO of Neon, violated the permanent injunction. *Id.* The Court granted that request. Dkt. 240. IBM filed a motion for an order directing Moores to show cause for his failure to abide by the injunction. Dkt. 241. After holding a hearing, the Court granted IBM's motion and found that Moores had violated the injunction in four instances. Dkt. 280. Moores now moves for reconsideration of two of the Court's findings, arguing that "the Court incorrectly ruled that he transferred IGZCUST code in violation of section (g) of the injunction and incorrectly interpreted the debugging exception such that Moores did not indirectly violate section (i) of the injunction." Dkt. 284, at 2. IBM opposes the motion, arguing that the Court already considered and rejected the arguments Moores raises in his motion to reconsider. *See* Dkt. 285. In reply, Moores maintains that he has demonstrated that he did not transfer IGZCUST code to anyone and that the de-compilation of IGZCUST code fell within the debugging exception. Dkt. 286.

## II. LEGAL STANDARD

Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Court may revise such an order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citations omitted). In comparison to Rule 59(e), Rule 54(b)'s approach is intended to reflect the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).

However, even though the standard for evaluating a motion to reconsider under Rule 54(b) is "'less exacting than that imposed by Rules 59 and 60 ... considerations similar to those under Rules 59 and 60 inform the Court's analysis.'" *Turk v. Pershing LLC*, No. 3:09-CV-2199-N, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019) (quoting *Rotella v. Mid-Continent Cas. Co.*, 2010 WL 1330449, at *5 (N.D. Tex. Apr. 5, 2010)). Ultimately, the critical inquiry is whether justice requires relief from the interlocutory order. *Kroger*, 864 F.3d at 337. "The more flexible approach under Rule 54(b) to reviewing motions for reconsideration should not lead to such motions automatically being granted." *Tomax AS v. Turbo Drill Indus., Inc.*, No. 6:21-CV-00260-ADA, 2023 WL 3171744, at *3 (W.D. Tex. Apr. 6, 2023). Instead, a court's discretion to grant relief under Rule 54(b) "'must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.'" *S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013).

## III. DISCUSSION

### A. Moores's motion to reconsider will be granted in part to correctly reflect the new version of the email provided to the Court.

Moores first presses the Court to reconsider its finding that Moores transferred IGZCUST code to two other people, which supported the Court's conclusion that Moores violated section (g) of the injunction by transferring the code. Dkts. 165, at 6; 280, at 13-19; 284, at 3-4. In response, IBM contends that Moores's participation in the email thread, even if he did not himself initially forward the email, still supports the Court's finding that he violated section (g) of the injunction; IBM further points out that Moores may also be held liable for his developer's transfer of the disassembled code. Dkt. 285, at 2-4. In reply, Moores insists that his responding the to the already-forwarded email thread cannot support the finding that he himself forwarded the dissembled code, and the Court did not make any factual findings as to his indirect liability for the transfer of the code through the at-issue email thread. Dkt. 287, at 4-5. Ultimately, Moores urges the Court to find that he did not violate section (g) of the injunction since he did not personally forward the disassembled code. Dkts. 284, at 3-4; 287, at 5.

Moores's attack on the Court's finding that he violated section (g) of the injunction revolves around an email, which Moores concedes contained dissembled IGZCUST code, but insists he merely responded to and did not forward to additional recipients. Dkt. 284, at 3-4. When responding to IBM's motion for an order directing Moores to show cause, Moores admitted in his briefing that he "opened a forwarded

email" and then "forwarded [it] to Thilo Rockmann at LzLabs." Dkts. 257, at 20-21; 280, at 14. In addition, Moores attached a copy of the email to this briefing that supported his own representation that he forwarded the email containing the disassembled code. Dkt. 257-14. Moores now attaches a different version of that email to his current motion, which shows that Moores responded to, but did not forward, the email containing the disassembled IGZCUST code. Dkt. 284-2.[1] Moores's new exhibit of the email omits Moores's response to the thread in which he offered feedback on the code contained within the email. *Compare* Dkt. 257-16 *with* Dkt. 284-2. Moores offers no explanation for his own misrepresentation of his role in the email or his failure to include this version of the exhibit in his prior briefing. Dkt. 284, at 3-4; 287, at 3-5.

In finding that Moores violated section (g) of the injunction, which prohibited him from directly or indirectly disclosing or transferring the code for zPrime, products functionally similar to zPrime, or z/OS, the Court concluded that Moores had "received disassembled code and forwarded it." Dkts. 165, at 6; 280, at 15. Moores's version of the email thread attached to his motion to reconsider contradicts the Court's factual finding that he forwarded to third parties the email containing the disassembled code. Dkts. 284-2; 280, at 14. The Court will thus grant Moores's motion to reconsider to reflect that Keith Rastall, Winsopia's general manager, in fact

[1] Moores also attached a portion of the transcript from the show-cause hearing in which his attorney represented that Moores had only responded to the email thread. Dkt. 284-1. Given that "argument of counsel is not evidence," however, this exhibit is of no value in assessing Moores's challenge to the Court's *factual* finding as to Moores' role in the email thread. *United States v. Thomas*, 627 F.3d 146, 158 (5th Cir. 2010).

forwarded the email to Thilo Rockmann, LzLabs' CEO, and Andrew Galewsky. Dky. 284-2.

However, the Court disagrees with Moores that this amended factual finding absolves him of liability for violating section (g) based on the email thread. First, the Court is not convinced that Rastall's initial forwarding of the code means that Moores's response in that thread did not separately violate section (g) by once again resharing the code through his response commenting on the disassembled code. Moores insists that "[n]othing is disclosed or transferred to any person who already has it," yet his comments on the thread nonetheless demonstrate that he directly participated in the improper transfer of the disassembled code by repeating the transfer of the code through his response and offering feedback to the recipients on how to effectively use the code. Dkts. 165, at 6; 257-16; 284-2, at 4; 287, at 4.

Having considered the record as supplemented by Moores's motion to reconsider, the Court additionally finds that IBM has shown by clear and convincing evidence that Moores also violated section (g) by indirectly disclosing and transferring the IGZCUST code through Rastall. Section (g) of the injunction prohibits Moores from "directly or indirectly" disclosing or transferring disassembled code. Dkt. 165, at 6. The Court explicitly found that Moores could be held in contempt based on the actions of his employees, especially given that "Moores encouraged employees of Winsopia and LzLabs to get around the" injunction. Dkt. 280, at 15-17. Moores does not challenge this finding in his motion to reconsider, instead arguing that "there was absolutely no evidence that Moores directed [Rastall] to engage in that conduct." Dkt.

287, at 5. In support of this argument, Moores cites *Test Masters Educational Services, Inc. v. Robin Singh Educ. Services Inc.*, where the Fifth Circuit vacated a district court's contempt findings as to an attorney based on the actions of his client because there was "insufficient evidence to find that [the attorney] personally violated the injunction." 799 F.3d 437, 456 (5th Cir. 2015), *on reh'g*, No. 13-20250, 2015 WL 13768849 (5th Cir. Oct. 22, 2015).

Yet the Court explicitly rejected Moores's argument that "the Court must find evidence that he directed an employee to" violate the injunction to hold Moores liable for a violation secured through the actions of his employee. Dkt. 280, at 15-16 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949); *Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 853 (9th Cir. 2023)). While the Court reached this conclusion in the context of evaluating Moores's violation of section (i) of the injunction, it applies equally to Moores's liability for Rastall's initial transfer of the code in the email thread. Dkt. 280, at 16 (finding that "Moores can be held in contempt for the actions of his employees"); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581-82 (5th Cir. 2000) (finding that executive officers of union "are subject to contempt charges for their failure to cause the [union] to comply with the district court's order"). Moores's response on the email thread improperly disclosing the disassembled code, in which Moores discusses the code with the recipients of the disclosure, also demonstrates that he approved of Rastall's transfer and can be held liable for the transfer. Dkts. 257-16; 284-2; *McNeal v. Tate Cnty. Sch. Dist.*, No. 2:70-CV-00029-DMB, 2016 WL 7156554, at *10 (N.D. Miss. Dec. 7, 2016) ("[A] defendant

may be held in contempt for the acts of an employee acting within his or her authority" (citing *Black Diamond Coal Mining Co. v. Local Union No. 8460, United Mine Workers of Am.*, 597 F.2d 495 (5th Cir. 1970))); *Quilling for Sardaukar Holdings, IBC v. 3-D Mktg., LLC*, 2007 WL 9711514, at *3 (N.D. Tex. July 18, 2017) (concluding that principal of LLC could be held in civil contempt for LLC's failure to comply with a disgorgement order). The Court thus declines to disturb its conclusion that Moores violated section (g) of the injunction.

Based on the above, Moores's motion to reconsider the contempt finding under section (g) is granted only to correct the record as to the fact that Moores did not forward the at-issue email, but rather responded in the thread, as reflected by the exhibit Moores did not previously provide to the Court. Moores's request to vacate the finding that he violated section (g) is denied because the record establishes by clear and convincing evidence that Moores violated section (g) either directly or indirectly.

**B. Moores's motion to reconsider the Court's finding that his conduct fell outside the debugging exception will be denied.**

Moores next argues that the Court erred in finding that Moores violated section (i) of the injunction because his conduct fell within the debugging exception contained in that provision. Dkt. 284, at 4-6. In response, IBM insists that Moores's arguments regarding the debugging exception were already raised and properly rejected by the Court in ruling on the motion to show cause. Dkt. 285, at 4-6. In reply, Moores maintains that the record evidence establishes that he disassembled IGZCUST code to improve his own product, not IBM's, and that the Court's reading of the injunction effectively obviates the debugging exception contained in section (i). Dkt. 284, at 4-6.

While section (i) of the injunction prohibits Moores from reverse assembling or reverse compiling any IBM program, it did not prohibit him from such activities "incident to debugging a product other than zPrime; provided that such product is not, and does not include, any software, product, or device with functionality similar to that of zPrime." Dkt. 165, at 6. But this exception applies but only "to the extent not otherwise restricted and if [Moores] otherwise ha[d] the right to do so." *Id.* In concluding that Moores's disassembly of IGZCUST code did not fall within the debugging exception, the Court concluded that the record established that the disassembly "was in service of developing the SDM, not causing IGZCUST to run more efficiently." Dkt. 280, at 17. Moores insists that the "the evidence shows that the disassembly of IBM code was to improve the SDM, which is a permitted use under the injunction, provided that the SDM does not have functionality similar to that of zPrime." Dkt. 284, at 5. Moores cites Lynch's statement that he dissembled IGZCUST code for "for problem determination purposes" because "it looked like . . . SDM wasn't doing something right" and Moores's assertion that the disassembly was undertaken "to improve performance on the SDM" as conclusive evidence that his conduct fell within the debugging exception. *Id.* at 6 (citing Dkts. 217-10, at 37; 257-2 at 22; 265-16 at 10).

Moores's arguments on this issue ignore the portion of the debugging exception limiting its application "to the extent not otherwise restricted and if [Moores] otherwise ha[d] the right to" engage in the reverse disassembly or decompiling. Dkt. 165, at 6; *see* Dkts. 284; 287. Under the terms of the injunction, and section (i) in

particular, however, Moores was restricted from reverse assembling or decompiling IBM code and did not otherwise have the right to engage in such conduct. Dkt. 165, at 6. This is precisely why the Court limited its analysis of Moores's argument regarding the debugging exception to the question of whether he undertook the disassembly of IGZCUST code to improve that product—because Moores was "otherwise restricted" from disassembling IBM's product to develop his own products and did not "otherwise ha[ve] the right to" do so under the unambiguous terms of the injunction. Dkt. 280, at 17-18.[2] Nothing in the record suggests that Moores undertook the disassembly to improve IGZCUST, and Moores does not challenge that factual finding in his motion for reconsideration. *Id.*; *see* Dkts. 284; 287. Moores's motion for reconsideration of the Court's finding that his conduct fell within the debugging exception in section (i) of the permanent injunction is denied.

## IV. ORDER

Based on the foregoing, **IT IS ORDERED** that Moores's motion for partial reconsideration of order to show cause, Dkt. 284, is **GRANTED IN PART** and **DENIED IN PART**. Moores's motion is granted to correct the record to reflect that he responded to the at-issue email containing IBM's disassembled code but did not forward the email himself. His motion is otherwise denied.

[2] The Court finds unpersuasive Moores's additional arguments that its reading of the debugging exception "effectively reads the proviso language" out of the injunction or "renders the debugging exception meaningless" given that his reading contradicts the plain language of the exception. Dkt. 284, at 5-6. As IBM points out, the injunction "ensures that the Enjoined Neon Persons cannot pursue *any* further disassembly as to zPrime and its progeny," which should not be read as an "authorization of product development." Dkt. 285, at 6.

SIGNED October 20, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE